STATE of Missouri, Respondent,

v.

Hubert POWELL, Defendant-Appellant.

No. 51167.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 17, 1987.

Motion for Rehearing and/or
Transfer Denied
April 15, 1987.

Application to Transfer Denied
May 19, 1987.

Robert Craig Wolfrum, Asst. Public Defender, St. Charles, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

DOWD, Judge.

Defendant, Hubert Eugene Powell, appeals from a judgment entered on a jury verdict which found him guilty of murder in the first degree under § 565.020, RSMo 1986, for the death of his son, Hubert Clayton Powell. Defendant was sentenced to life imprisonment without possibility of parole. We affirm.

The jury could reasonably have found the following. On the evening of June 21, 1985 defendant, his son and his five-year-old grandson drove into the nearby town of Foley to buy cigarettes and to drink a few beers at the Foley Lounge. Upon returning to his trailer home, Clayton Powell remained outside and continued to drink beer. Defendant, who had gone inside the trailer home with his grandson, sent his grandson outside on an errand. As the grandson walked outside, Clayton Powell threatened "to whup" the boy. The threats ignited an argument between defendant and his son. As the argument continued, defendant retrieved and loaded his shotgun and placed it beside him inside the trailer. Clayton Powell then entered the trailer home where defendant fatally shot him in the chest with a 12–gauge shotgun.

The deputy sheriff arrived at the Powell residence in response to a call from defendant's wife concerning an "unknown disturbance." Upon his arrival, he found the victim lying in a pool of blood with a chest wound, and he saw the defendant seated at the table with his shotgun behind him. He also observed a knife lying beside the victim's body. Subsequently, defendant voluntarily admitted that he shot his son and the deputy then arrested him.

In custody, defendant made several statements to the police regarding the sequence of events immediately before the shooting. In his first statement, defendant claimed that his son approached him with a knife in his hand. In his second statement, defendant maintained that his son carried a knife. Defendant later admitted however, that after the shooting, defendant directed his grandson to place a knife beside Clayton Powell's body. In his final statement, defendant conceded that his son had never possessed a knife. Defendant also claimed that two weeks prior to the shooting his son had beaten him and that he was "scared" of his son. He stated the threats to the grandchild made his "blood run hot" and made him reach for the gun without thinking.

During trial, an autopsy report on Clayton Powell revealed a blood alcohol content of .347 by weight per volume. (Section 577.037, RSMo 1986, allows a presumption of intoxication where there is .100 of one percent by weight of alcohol in a person's blood). The expert witness who prepared the report testified that a blood alcohol level of .347 would severely impair Clayton Powell's vision and motor skills, "rendering him incapable of initiating any effective assault."

At the close of the evidence, the jury returned a verdict of first degree murder and sentenced defendant to life imprisonment without possibility of parole.

Appellant contends that the trial court erred in: (1)(a) refusing his instruction on second degree murder which contained a provision necessitating the jury to find an absence of sudden passion; and (b) refusing his instruction on voluntary manslaughter; (2) denying his motion to suppress statements made during an unlawful arrest; and (3) not transferring the case to the Missouri Supreme Court pursuant to Rule 32.07(e)(4).

Appellant contends in his first point the trial court erred in refusing to submit a second degree murder instruction that required the jury to find an absence of sudden passion. In its instruction to the jury, the trial court submitted MAI–CR2d No. 13.02, the instruction on conventional murder in the first degree. As required by MAI–CR2d No. 13.02, the instruction contained the definition of deliberation as "a cool reflection upon the matter for any length of time, no matter how brief." The trial court also gave a conventional second degree instruction to the jury which included a self defense paragraph. The trial court however, refused to submit defendant's offered second degree instruction which included an optional paragraph. The optional paragraph states: "Third, that the defendant did not do so under the influence of sudden passion arising from adequate cause." The Notes on Use following MAI–CR2d No. 13.04 state: "If there is evidence supporting sudden passion arising from adequate cause, paragraph third must be given." Defendant initially contends that sufficient evidence, based on his statements, exists to warrant inclusion of the third paragraph in the second degree murder instruction.

■ MAI–CR2d governs the submission of instructions on homicide offenses. Rule 28.02(c). The prejudicial effect of giving or failing to give an instruction in accordance with MAI–CR2d is to be judicially determined. Rule 28.02(e); *State v. White*, 622 S.W.2d 939, 943 (Mo. banc 1981). Such errors are presumptively prejudicial unless the contrary clearly appears. *Id.* To determine the existence of prejudicial error, the court must review all instructions as a whole. *State v. Sallee*, 436 S.W.2d 246, 252 (Mo.1969).

■ The trial court instructed the jury on first and second degree murder. Deliberation distinguishes first degree murder from second degree murder. *State v. Endres*, 698 S.W.2d 591, 594 (Mo.App.1985). The instruction on conventional second degree murder, MAI–CR2d No. 13.04, begins "if you do not find the Defendant guilty of murder in the first degree, you must consider whether he is guilty of murder in the second degree." This directive requires the jury to fail to convict of the higher offense before a consideration of a lower grade of the offense. *State v. Hacker*, 214 S.W.2d 413, 416 (Mo.1948).

■ The jury found appellant guilty of murder in the first degree. This verdict necessitates a finding of deliberation. *Endres, supra.* Upon finding evidence of deliberation, the jury would not have considered second degree murder regardless of whether the instruction contained a sudden passion provision. Therefore, the failure of the trial court to give a second degree murder instruction with the sudden passion provision was not prejudicial error.

Appellant also contends the trial court erred in failing to submit his requested voluntary manslaughter instruction. Defendant relies on *State v. Ayers*, 470 S.W.2d 534 (Mo. banc 1971); and *State v. Patterson*, 484 S.W.2d 278 (Mo.1972), to support his contention.

In *Ayers*, the appellant was charged with second degree murder but convicted of manslaughter. The appellant contended the instruction on manslaughter was error and that the appellant was guilty of second degree murder or not guilty at all. *Ayers, supra* at 537. The court disagreed and held that the existence of premeditation and malice was an issue within the province of the jury, and the court must instruct on both offenses. Appellant's reliance on *Ayers* however, is misplaced. In *Ayers*, the

jury convicted appellant of manslaughter, the lesser charged offense. In the present case, the jury convicted of first degree murder and rejected the lesser offense of second degree murder. *Ayers* does not support appellant's contention.

■ Similarly, the appellant in *Patterson* was convicted of second degree murder. On appeal, the appellant relied on *Ayers* to support his contention that the trial court erred in refusing to give a manslaughter instruction. *Patterson, supra* at 279. The court agreed and stated that the absence of malice presented an issue for the jury and therefore, the court must submit a second degree murder and manslaughter instruction. *Patterson, supra* at 280. The present case is also distinguishable from *Patterson*. The jury in the instant case found that the evidence supported a finding of deliberation and convicted him of first degree murder; not second degree murder. It is therefore not necessary to decide whether evidence existed to support a manslaughter instruction. The jury convicted appellant of first degree murder and did not take the first step in reducing the offense to second degree murder. Thus, no reasonable basis exists to suggest that the jury would have exercised greater leniency and reduced the conviction to manslaughter. *State v. Householder,*[1] 637 S.W.2d 324, 328 (Mo.App.1982); *State v. Smith*, 598 S.W.2d 118, 121 (Mo.1980). Furthermore, the gravity of a sentence of life imprisonment negates any contention that the jury would have convicted of a lesser offense. *Love v. State*, 670 S.W.2d 499, 503 (Mo. banc 1984). We therefore, find the trial court's failure to instruct on manslaughter could not be prejudicial error.

Appellant contends in his second point the trial court erred in denying his motion to suppress statements made after an unlawful arrest which occurred in his home, without a warrant and without authority.

■ A warrantless nonconsensual entry into a suspect's home to make a routine

felony arrest violates the suspect's Fourth Amendment rights. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). This remains true even though the police have gathered sufficient evidence to establish probable cause that the suspect committed a crime. *Payton, supra.* The operative element of this rule however is "nonconsensual entry." *Newman v. State*, 669 S.W.2d 617, 619 (Mo.App.1984). If consent is given by a person authorized to allow entry, a warrant for arrest is not necessary. *Newman, supra.* Absent evidence of involuntary consent, authorization exists where one who possess common authority over the premises allows entry. *U.S. v. Purham*, 725 F.2d 450, 454 (8th Cir.1984).

■ Appellant's wife called the police to report an "unknown disturbance." The deputy sheriff and the wife arrived at the trailer house simultaneously. The deputy received no response from Mrs. Powell in answer to his questions concerning the nature of the unknown disturbance. Instead, appellant's wife led the deputy into the trailer home. No evidence of involuntary consent exists. Therefore, the deputy's entry was consensual; discharging any warrant requirement.

Appellant relies on *State v. Mayes*, 654 S.W.2d 926 (Mo.App.1983) to support his contention that defendant's warrantless arrest in his home was unlawful. *Mayes* is distinguishable from the present case. In *Mayes*, the police arrested the defendant seventeen days after the offense was committed. The court stated that the arrest was unlawful in view of the time available to obtain a warrant. *Mayes, supra* at 936. In the present case, appellant was arrested immediately.

■ An arrest is lawful where probable cause exists. *State v. Robinson*, 484 S.W.2d 186, 189 (Mo.1972). Probable cause for an arrest without a warrant requires that the arresting officer's knowledge of the facts must: (1) be sufficient to warrant

---

**1.** *State v. Householder* is an assault case. MAI–CR2d No. 13.00 states that "the submission of lesser offense instruction in homicide cases is now governed by the same rules as the submission of lesser offense instructions for other offenses."

a man of reasonable caution to believe that an offense has been committed; and (2) warrant a belief that the person arrested committed the offense. *State v. Moore,* 659 S.W.2d 252, 255 (Mo.App.1983). The facts supporting the existence of probable cause must be known at the time of the arrest. *Moore, supra.*

 Prior to the arrest, the deputy observed the victim's body on the floor and a shotgun next to the appellant. Appellant voluntarily admitted shooting his son. The deputy possessed sufficient facts to believe that a crime had been committed and that appellant had perpetrated the crime. The facts establish probable cause and appellant's second point is therefore denied.

Appellant contends in his third point that the court erred "when it set the case for trial before itself following disqualification of the presiding judge in the circuit because Missouri Supreme Court Rule 32.-07(e)(4) requires transfer of a case to the Missouri Supreme Court following disqualification of the presiding judge."

The presiding judge of the circuit to which the case was originally assigned was disqualified by motion. The case was then set in another division. Rule 32.07(e)(4) which addresses procedure following the disqualification of a judge states:

> If the case is being heard by a circuit judge in a circuit having three or more circuit judges, the judge shall transfer the case to the presiding judge for assignment by lot or the presiding judge may request this Court to transfer a judge or the case may be assigned in accordance with local court rules.

The rule provides three alternatives, none of which are transfer to the Supreme Court. The rule provides that the presiding judge may request the Supreme Court to transfer a judge but not that a transfer to the Supreme Court of the case itself is mandated.

Further, appellant in no way alleges that transfer was made by means other than those required by the rule. Appellant has not alleged the transfer was not made by assignment by lot or not made in accordance with local court rules. Appellant fails to offer any authority other than the rule itself for his proposition, and also fails to allege any grounds of prejudice on the part of the trial judge. Appellant's bald assertion that the case was not set in accordance with the rule is without merit. Point denied.

Judgment affirmed.

SMITH, P.J., and REINHARD, J., concur.