**STATE of Missouri, Respondent,**

v.

**Dennis R. WINNINGHAM, Appellant.**

No. 52168.

Missouri Court of Appeals,
Eastern District,
Northern Division.

June 16, 1987.

Motion for Rehearing and/or Transfer
Denied July 21, 1987.

Thomas R. Motley, Hannibal, for appellant.

William L. Webster, Atty. Gen., Colly Frissell-Durley, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Winningham (defendant) appeals from his jury conviction of leaving the scene of a motor vehicle accident. He was sentenced to one year in jail to be served consecutively to prior sentences, and fined $5,000. We affirm.

On November 21, 1984, Chad Stombaugh, a seventeen-year-old high school student, was driving home after attending basketball practice and working out in a weight room. Around 7:30 to 8:00 p.m., while traveling on Route O in Ralls County, Missouri, Chad's car was struck in the rear by a car driven by a man Chad later identified as defendant. Chad lost control of his car after the impact and it went off the left side of the road ending up on its top in a ditch. Chad was thrown from his car and received injuries to his neck, cuts and a broken wrist. The car driven by defendant spun around 180 degrees and came to a stop on the right side of the road with steam coming from the engine.

A passerby stopped and assisted Chad to the road. Chad watched the defendant as he walked approximately 60 to 70 feet from his car to where Chad and the passerby were standing. When defendant reached them, he hit Chad in the face. Chad testified he had never seen defendant before that time. He paid close attention to defendant because he felt defendant had intentionally run him off the road. While it was night, the natural lighting and an outside light from a nearby trailer enabled Chad to clearly see defendant.

Chad ran towards the trailer and, finding no one there, continued up the road to seek help. Defendant walked off in the other

direction without leaving any identification. Later, Chad returned and gave his story to the police. He described the driver of the other car as a bearded man a little over six feet tall who wore dark trousers or jeans and a baseball cap and a beard.

While the car did not have license plates or anything to identify the owner, defendant's father showed up and identified the car as his son's car. Chad was called in by the police two days later to possibly identify defendant as the other driver. By this time defendant was clean-shaven. Defendant was not a part of a lineup when Chad saw defendant through a one-way mirror and identified defendant as the other driver. Chad again identified defendant at the trial which was held approximately one year and eight months later.

In his sole point on appeal, defendant alleges the trial court erred in permitting Chad's in-court identification. He alleged Chad's in-court identification was a result of unduly suggestive identification procedures.

The determination of the admissibility of an in-court identification requires a two-step analysis. The court first determines whether police procedures were impermissibly suggestive. If so, the court then determines the reliability of the subsequent in-court identification. *State v. Robinson,* 641 S.W.2d 423, 427 (Mo. banc 1982); *State v. Howard,* 699 S.W.2d 58, 59 (Mo. App.1985).

Defendant complains the procedure used by the police, the use of a one-on-one "showup" instead of a lineup, was unduly suggestive and tainted any subsequent identification made by Chad. The use of a "showup" under certain circumstances has been approved by this court. *State v. Overstreet,* 694 S.W.2d 491, 494–95 [6] (Mo. App.1985). While the use of a lineup would have been preferable, we are unwilling to say the use of a "showup" under these circumstances is *per se* impermissibly suggestive. Other than telling Chad there was a suspect he might be able to identify, the police did nothing to encourage or suggest to Chad that defendant was the other driver.

Even assuming the identification was unduly suggestive, the issue is whether there was an abuse of trial court discretion in making a determination Chad's identification was reliable. In determining the admissibility of identification testimony, reliability, not suggestiveness, is the key factor. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Robinson,* 641 S.W.2d at 427. The reliability of the in-court identification is assessed under the totality of the circumstances. *State v. Littleton,* 649 S.W.2d 225, 227 (Mo. banc 1983); *State v. Reasonover,* 700 S.W.2d 178, 182 (Mo.App.1985).

Courts consider the following factors in determining whether identification testimony is reliable: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior identification of the criminal; (4) the level of certainty demonstrated by the witness at the time of the confrontation; and (5) the length of time between the crime and the confrontation. *State v. Higgins,* 592 S.W.2d 151, 160 (Mo. banc 1979).

As to point one, Chad watched defendant as he crossed the road to where Chad was standing. Defendant claims the darkness did not give Chad an ample opportunity to adequately view the driver of the other car. There was little evidence to show how much light was available when defendant approached and struck Chad. It was not brought out whether the sky was overcast or whether there was light from a full moon. The brightness of the light from the nearby trailer is unclear. The only definite evidence is Chad's testimony that he was able to clearly see defendant.

As to point two, Chad testified he paid close attention because he felt defendant purposely rear ended him. Defendant argues Chad could not have had an adequate degree of attention after the accident. He points out that Chad admitted he was "kind of delirious" after the crash. The extent of Chad's memory about the evening, especially as corroborated by other testimony, shows Chad was not too delirious to be totally unreliable.

**6**

As to the third point, Chad was able to give an accurate although general description of defendant. Defendant is in fact a little over six feet tall, and another witness testified defendant had a beard around 4 p.m. on the day of the incident. Defendant claims a lack of detail in the description should weigh against the admissibility of the identification. Especially where the description is not inaccurate, the lack of specificity of the description goes to the weight of the evidence and not its admissibility.

As to points four and five, both point towards reliability. Chad was certain at all times that defendant was the other driver, and the confrontation took place only two days after the incident.

Under the totality of the circumstances, the trial court correctly admitted the identification testimony. The few questions raised by defendant do not make the identification so unreliable as to be inadmissible. Those questions were properly placed before the jury so that they could decide the weight to be given to the identification testimony.

Judgment affirmed.

DOWD, P.J., and SIMEONE, Senior Judge, concur.