**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Robert G. BURROUGHS,
Defendant-Appellant.**

**No. 52427.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 22, 1987.

Motion for Rehearing and/or Transfer
Denied Oct. 23, 1987.

Application to Transfer Denied
Dec. 15, 1987.

Michael D. Burton, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Scott Templeton, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

REINHARD, Judge.

Defendant was found guilty by a jury of stealing a motor vehicle. The trial court sentenced him as a persistent offender to fifteen years in prison. Defendant appeals; we affirm.

Defendant and Donald Cox were serving prison terms at the Missouri Eastern Correctional Center in Pacific, Missouri, defendant for first degree robbery with a dangerous and deadly weapon and Cox for first degree murder. On Friday, July 12, 1985, the two men were in a crew working in the prison garden, outside the perimeter fence of the prison. The garden crew was left unsupervised in the prison garage, also outside the fence, for about 25 minutes. Defendant and Cox fled the garage while their supervising officer was gone. Their prison clothing was found partially concealed on the far side of the woods bordering the prison.

The next day, Saturday, July 13, the two men showed up at the Curt Ogden Equipment Company (hereinafter Curt Ogden) in Fenton, Missouri, at about 6:30 p.m. They asked to use the telephone, stating that their boat had sunk in the nearby river. Two employees of Curt Ogden, Ervin Janko and Jeffrey Morgan, were closing the business for the day, but they allowed defendant and Cox to use the phone for about fifteen minutes. When Morgan and Janko left, they saw defendant and Cox sitting on the grass next to a boom truck owned by Curt Ogden.

On Sunday, July 14, Curt Ogden reported the boom truck stolen. At 6:00 p.m. that day the boom truck was found in Cape Girardeau, Missouri. The police dusted the truck for fingerprints. Later it was discovered prints found on the truck and toolbox matched those of defendant. On July 17, defendant and Cox were apprehended in Forrest City, Arkansas, in a stolen vehicle.

Defendant was tried separately and convicted on a charge of escape from confinement. At that trial Morgan and Janko identified defendant as one of the men that had been at Curt Ogden the evening of July 13. Subsequently the charge against defendant for stealing a motor vehicle was consolidated for trial with the escape and

stealing a motor vehicle charges pending against Cox.[1] Defendant's stealing conviction is the subject of this appeal.

Before trial on the stealing charge, the state agreed not to mention defendant's escape conviction. Apparently a memo of this agreement was filed with the court. During the course of the trial the state called Morgan as a witness. On direct examination no reference was made to the escape conviction. On cross-examination defendant's counsel attempted to impeach Morgan's credibility as to his identification of defendant.

The following questions were asked by defendant's counsel, and the following responses were given:

Q. And you have no doubt in your mind that that was the individual that was in Curt Ogden?

A. I'm almost positive.

Q. Do you recall coming into a courtroom back in April, Mr. Morgan?

A. Yes.

Q. And do you remember my asking you questions?

A. Yes. Yes, and I got very confused.

Q. You were under oath at that time; is that correct?

A. Yes.

Q. And do you remember when someone asked you, "Is that the individual that was in Curt Ogden?" and you specifically said, "He doesn't look the same. His facial features are different. He looks different."

A. That was this gentleman that I was remembering distinctly, okay?

Q. And so, you were not talking about the individual, Mr. Burroughs; is that correct?

A. Not the man I was remembering distinctly, okay?

Q. So, in other words, when you came into court, you weren't talking at all about the individual, Mr. Burroughs, here?

A. I guess I was relating them together, you know what I mean? And he

stood out in my mind more so, and I guess I got confused whenever I just seen the other gentleman.

Q. But you don't—You are agreeing that when someone specifically asked you whether or not that individual was in Curt Ogden, you specifically said, "He looks different"?

A. Yeah. That's what I was referring to.

.    .    .    .    .

Q. Mr. Morgan, are you telling the truth today, or were you telling the truth back in April?

A. I'm telling the truth today because of—I can see the two gentlemen together and make a positive distinction, okay?

Q. Let me ask you, how does it make a difference when the two individuals are together?

A. It just brings back memories a little clearer.

Q. Okay. What was closer to the actual time you saw these individuals at Curt Ogden, your testimony today or the testimony in April?

A. They should be the same. The time of the day, is that what you're asking?

Q. I'm asking you, was your memory better today or is there—

A. Oh, today.

Q. You have no doubt in your mind that your memory is better today?

A. Yeah.

Q. So, it's possible that, when you testified earlier, that your memory was not correct? Is that was you're saying?

A. I was confused.

Q. Okay. What were you confused about?

A. That the gentleman looked very familiar, but I was getting him confused with the other gentleman, so I couldn't say, "Yes, that's the man that I—".

Next the prosecutor, Mr. Meiners, asked the following questions on redirect examination and the following responses were made:

---

1. In an opinion handed down this same date, we affirm the convictions of Cox. *See State v. Cox,* 740 S.W.2d 275 (Mo.App.1987).

Q. The last time you were in trial, you only saw one of them; is that right?

MR. BURTON [counsel for defendant]: Your Honor, could I approach the bench, please?

THE WITNESS: I only recognized—partially recognized one, yes.

MR. MEINERS: All right. And—

MR. BURTON: May I approach the bench, Your Honor?

THE COURT: Yes, you may approach the bench.

(Counsel approached the bench and the following proceedings were had:)

. . . .

MR. BURTON: At this time, I would like to make a motion for a mistrial—

. . . .

MR. BURTON: —primarily because at this time I asked Mr. Morgan specifically whether or not he saw Mr. Burroughs when he came into the courtroom. I never mentioned the fact that it was an actual trial. Mr. Meiners just said, "Did you notice that the—when you were being asked questions when you were in trial?"

That specifically would suggest to the jury, no question about it, that he was here testifying concerning Mr. Burroughs' escape. I'd like a motion for a mistrial due to that prejudice.

. . . .

THE COURT: Do you have anything to say, Mr. Meiners?

MR. MEINERS: He opened it up. He started the whole thing.

MS. PERRON [counsel for codefendant Cox]: He never—

MR. MEINERS: What word you use is irrelevant.

THE COURT: I still don't think it violates the specifics that were set out in the memo. It says, "He will not make any reference to a conviction." It doesn't say anything about a trial.

The memo of July 2, the last paragraph there states as follows: "State hereby agrees, at trial of above Defendant," referring to Cox—No, excuse me—"of above Defendants," referring to them in the plural, "to at no time men-

tion, for impeachment or otherwise, the fact that Defendant Burroughs was convicted of the aforementioned escape."

The motion will be denied.

(Proceedings returned to open court.)

BY MR. MEINERS:

Q. Let me repeat the question. The last time we did this, there was only one person here; is that right?

A. Yes.

Q. All right. Now they're both here; is that right?

A. Right.

Q. Is that what the confusion stems from?

A. Yes.

MR. BURTON: Your Honor, I have the same objection. I think it's very prejudicial.

MR. MEINERS: I have no further questions.

THE COURT: Overruled. Any recross, Ms. Perron?

MS. PERRON: One moment, Your Honor.

THE COURT: All right.

RECROSS-EXAMINATION BY MS. PERRON:

Q. Am I to understand, Mr. Morgan, that what you're telling us is that today, on September 16, your memory is more accurate than it was six months ago, in April of this year?

A. Being jogged with the two gentlemen where I can see them both, yes. I can truthfully say yes.

MS. PERRON: No further questions.

MR. BURTON: I have no questions, Your Honor.

On appeal defendant raises one point in which he argues the court erred in refusing to declare a mistrial. He contends the prosecutor's question using the word "trial" impermissibly referred to defendant's prior conviction.

█ The declaration of a mistrial is a drastic remedy. It should be employed only in those extraordinary circumstances in which the prejudice to the defendant can be removed in no other way. *State v. Jones*, 714 S.W.2d 909, 912 (Mo.App.1986). The decision to declare a mistrial rests

largely within the discretion of the trial court because the trial court observes the incident giving rise to the request for a mistrial and is in a better position than we are to determine any prejudice the incident has on the jury. The trial court's decision will not be disturbed in the absence of an abuse of discretion. *Id.*

 Here, the trial court did not err in denying defendant's request for a mistrial. Reference to the prior proceeding was brought about by defendant's counsel in cross-examining Morgan (which appears to us to have been good trial strategy: impeachment of a witness with his prior inconsistent statements). The state's reference to the prior proceeding on redirect was proper because it was first raised in the cross-examination of Morgan by defendant's counsel. *State v. Lingar,* 726 S.W.2d 728, 734 (Mo. banc 1987). In any event, no reference was made by either counsel to a conviction, and the pretrial agreement was not violated.

Judgment affirmed.

DOWD, P.J., and GARY M. GAERTNER, J., concur.